IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01143-RBJ

DIANNE MILLSAP, parent of Ryan Millsap and personal Representative of the Estate of Ryan Millsap, deceased,

    Plaintiff,

v.

JEFFERSON COUNTY SHERIFF'S DEPARTMENT, a governmental entity,
JEFFERSON COUNTY, a governmental entity,
COLORADO STATE PATROL, a governmental entity,
JEFFERSON COUNTY SHERIFF'S DEPUTY VINCENT ALONSO
COLORADO STATE TROOPER GREGORIO RETANA
COLONEL MATTHEW PACKARD, in his individual capacity,
RALPH TURANO, Legal Training Attorney for the Colorado State Patrol, in his individual and official capacity

    Defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on two motions: (1) the motion to dismiss plaintiff's amended complaint filed by defendants Vincent Alonso and the Jefferson County Sheriff's Department, ECF No. 28; and (2) the motion to dismiss filed by defendants Colorado State Patrol, Matthew Packard, Gregorio Retana, and Ralph Turano, ECF No. 29.  For the reasons stated below, the first motion is GRANTED, and the second motion is GRANTED in part and DENIED in part.

### I.    FACTUAL BACKGROUND

This case involves the November 4, 2018 fatal shooting of Ryan Millsap.  The following facts are derived from the amended complaint and are assumed to be true for the purposes of this

order. The plaintiff is Dianna Millsap, mother of Mr. Millsap and duly appointed representative of his estate. The first group of defendants, hereinafter referred to as "the Jefferson County defendants," includes Jefferson County Sheriff's Deputy Vincent Alonso and the Jefferson County Sheriff's Department ("the Department"). The second group of defendants, hereinafter referred to as "the CSP defendants," includes Colorado State Patrol ("CSP"), CSP Colonel Matthew Packard, CSP Trooper Gregorio Retana, and CSP Legal Training Attorney Ralph Turano.

On the evening of November 4, 2018 Mr. Millsap was asleep in a tan 2002 Toyota 4Runner on the shoulder of Highway 6 in a rural area of Jefferson County, Colorado. ECF No. 24 at ¶ 9. Mr. Millsap sat in the driver's seat, and another individual was asleep in the passenger seat. *Id.* at ¶ 11. On a routine patrol, Trooper Retana discovered the 4Runner and learned that it had recently been reported stolen. *Id.* at ¶¶ 9–10. Once he realized individuals were sleeping in the vehicle, Trooper Retana requested assistance from other officers. *Id.* at ¶ 12. Deputy Alonso and two other law enforcement officers joined Trooper Retana at the scene. *Id.* at ¶¶ 14–15. All four law enforcement vehicles were partially parked on Highway 6, leaving room for cars to maneuver around them. *Id.* at ¶ 15. While planning the procedure, Trooper Retana informed the officers that he was inexperienced in the type of tactical situation that involved getting two sleeping occupants out of a car. Other officers blocked all traffic on Highway 6 and were at least half a mile away from the 4Runner. *Id.* at ¶¶ 18–19. No other individuals were located between the 4Runner and the officers blocking traffic. *Id.* at ¶ 39.

Using their vehicles for cover, the officers began shouting commands at the 4Runner's occupants to wake them up. *Id.* at ¶¶ 16, 22. Mr. Millsap woke up, started the 4Runner, and began to slowly maneuver around the officers, never once driving directly at them. *Id.* at ¶ 23.

The 4Runner had passed the officers' position and was still driving slowly when Trooper Retana began firing his gun at the vehicle. *Id.* at ¶ 24. Deputy Alonso, standing right next to Trooper Retana, also fired his gun at the 4Runner. *Id.* The officers struck Mr. Millsap in the back, right portion of his head, and he died shortly thereafter. *Id.* at ¶¶ 26–27.

## II. PROCEDURAL BACKGROUND

Plaintiff filed this case on April 23, 2020. ECF No. 1. Plaintiff filed the operative complaint on July 27, 2020. ECF No. 24. The Jefferson County defendants filed a motion to dismiss on August 10, 2020, and plaintiff filed a response on August 31, 2020. ECF Nos. 28, 30. The CSP defendants filed their motion to dismiss on August 17, 2020, and plaintiffs responded on September 4, 2020. ECF Nos. 29, 33. The Jefferson County defendants filed their reply on September 14, 2020, and the CSP defendants filed their reply on September 18, 2020. ECF Nos. 34, 35. This matter is ripe for review.

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*,

*Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

If the parties rely on materials found outside the four corners of the complaint, the court has the discretion to convert a motion to dismiss to one for summary judgment. If it does so the court must inform the parties and permit them to meet all factual allegations with countervailing evidence. *See* FED. R. CIV. P. 12(d); *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). The court may consider evidence beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the claims, referred to in the complaint, and if the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

Plaintiff contends that the Court must convert the Jefferson County defendants' motion to dismiss to one for summary judgment because they "submitted several facts . . . not originally contained in plaintiff's complaint." ECF No. 30 at 3–4. While both defendants offer facts that are at odds with plaintiff's version of events, they do not refer to any evidence or documents outside of the pleadings. *See, e.g.*, ECF No. 28 at 7; ECF No. 29 at 3. Therefore, I will not convert either of defendants' motions, nor will I consider defendants' versions of events to the extent they contradict the complaint—to do so would be inappropriate at this stage.

## IV. ANALYSIS

Both the CSP defendants and the Jefferson County defendants make similar arguments in their motions. I therefore address their motions together. Defendants move to dismiss all of plaintiff's claims. First, they argue that Deputy Alonso and Trooper Retana are entitled to qualified immunity. Second, they argue that plaintiff has failed to sufficiently plead municipal liability. I address each argument in turn.

### A. Whether defendants are entitled to qualified immunity

Defendants Alonso and Retana assert qualified immunity and contend they are shielded from personal liability for civil damages. Plaintiff argues they are not. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To avoid application of qualified immunity, a plaintiff must (1) allege facts that make out a violation of a constitutional right, and (2) show that the constitutional right was clearly established at the time it was allegedly violated. *Id.* at 232; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A reviewing court has discretion to address either prong first. *Pearson*, 555 U.S. at 236. I first determine whether the alleged facts make out a constitutional violation.

1. Whether a violation of a constitutional right occurred

Plaintiff contends that Deputy Alonso's and Trooper Retana's conduct constitutes excessive force resulting in death in violation of the Fourth Amendment of the United States Constitution. "[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Courts use the test laid out in *Graham v. Connor* to determine whether a seizure is unconstitutional excessive force. 490 U.S. 386, 396 (1989). Under *Graham*, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citation and internal quotation marks omitted). Whether use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. The three

*Graham* factors are: (1) the severity of the crime for which the suspect was seized, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing. *Id.* The *Graham* factors should be applied in the light most favorable to plaintiff. *See Bond v. City of Tahlequah*, 981 F.3d 808, 819 (10th Cir. 2020).

        a. <u>Trooper Retana's conduct</u>

Both defendant officers faced nearly identical circumstances and performed nearly identical actions through the events of this case; however, qualified immunity is a highly individualized inquiry. I therefore analyze their actions separately. It is uncontested that Deputy Alonso and Trooper Retana seized Mr. Millsap when they fatally shot him. Instead, the central issue is whether their use of force was *reasonable*.

To determine whether Trooper Retana's conduct was reasonable, I begin with the second *Graham* factor—whether the suspect posed an immediate threat to officers—because it "is undoubtedly the "most important" and fact-intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1215–16 (10th Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)); *see also Bond*, 981 F.3d at 820. "This is particularly true in a deadly force case, because deadly force is authorized only if a reasonable officer in the officer's position would have had probable cause to believe that there was a serious threat of physical harm to himself or others." *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (citing *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009)) (internal quotations omitted). This factor weighs strongly in Mrs. Millsap's favor, as the suspect did not pose an immediate threat to the safety of the officers or others. Both defendants argue that *Thomas v. Durastanti*, 607 F.3d 655 (10th Cir. 2010) stands for the proposition that officers

may use deadly force when facing a serious threat, including when vehicles attempt to run them over. ECF No. 29 at 7. What they fail to distinguish, however, is that the officer in *Durastanti* was in the vehicle's path and had to act to avoid being run over. *Durastanti*, 607 F.3d at 661. Here, plaintiff alleges that Mr. Millsap's driving put no one in immediate danger because "[t]he 4Runner never drove directly at the officers and was at least 15 feet away from the officers when it passed their position." ECF No. 24 at ¶ 54. Although defendants contend that Mr. Millsap drove directly at the officers, that fact contradicts the complaint. I therefore will not consider it at this stage of litigation.

The second *Graham* factor is evaluated at the precise moment that force is used. *See Durastanti*, 607 F.3d at 664 ("We must consider whether Agent Durastanti could have reasonably perceived he was in danger at the precise moment that he used force . . . ."). Based on the alleged facts, Trooper Retana could not have reasonably believed that he or anyone else was in danger at the moment the 4Runner moved slowly away from the officers, and they began shooting at Mr. Millsap. Officers shot Mr. Millsap in the *back* of the head, and only began shooting once he had already passed them. *Id.* at ¶ 24. *See Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) (concluding that the fact that bullets entered the side of the truck strongly suggested that the suspect was no longer bearing down upon the officer at the moment the shots were fired). The other officers blocking traffic were at least a half mile away from the 4Runner's location, too far to be in immediate danger from a slow-moving vehicle. *Id.* at ¶ 19. The allegation that the 4Runner moved slowly is also substantial, as it suggests that Mr. Millsap was taking great care not to strike any person or object in his vicinity. Plaintiff alleges that none of the officers had probable cause to believe the unidentified driver had a gun or was involved in any violent felonies. While this may be conclusory, the alleged facts do not support the

conclusion that that the suspects were armed.  I therefore conclude that the second *Graham* factor weighs towards plaintiff because Trooper Retana could not have reasonably believed that Mr. Millsap posed an immediate threat to anyone on the scene.

Although the second *Graham* factor weighs in favor of plaintiff, the remaining two factors weigh in favor of Trooper Retana.  The first factor—the severity of the crime for which the suspect was seized—weighs towards Trooper Retana because Mr. Millsap was suspected of stealing the 4Runner, and motor vehicle theft is a felony in the State of Colorado.  *See Vette v. K-9 Unit Deputy Sanders*¸ 989 F.3d 1154, 1170 (10th Cir. 2021) (explaining that the Tenth Circuit's "binding precedent indicates that the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent.").  The officers had no information regarding the 4Runner's occupants.  They only knew that the 4Runner was recently stolen.  A reasonable suspicion that an individual has stolen a vehicle is not grounds to apply deadly force.  That being said, because car theft is a felony, I still find this factor weighs in Trooper Retana's favor.  The Court, however, does not attribute it great weight, especially in light of how strongly the second factor weighs towards plaintiff.  *See Id*.

The third *Graham* factor—whether Mr. Millsap was actively resisting arrest or attempting to evade arrest by fleeing—similarly weighs against plaintiff.  Mr. Millsap maneuvered around the officers and ignored their commands to stop.  *Id.* at ¶ 22–23.  A reasonable officer in Trooper Retana's position would have believed that Mr. Millsap was attempting to flee the scene, even when viewing the facts in the light most favorable to plaintiff.  On the other hand, the 4Runner never sped up after passing the officers, which undermines the idea that deadly force was necessary to stop the suspect from fleeing.  Furthermore, Mr. Millsap did not use physical force against the officers or engage in any combative struggle or resistance

that would merit deadly force as a means to stop an escape. The third *Graham* factor therefore weighs towards Trooper Retana, though I conclude its weight is also limited because Mr. Millsap did not physically resist arrest and was moving slowly away from the officers at the time the shots were fired.

In summary, the Court finds that the second *Graham* factor weighs towards plaintiff, and the first and third factors weigh in favor of Trooper Retana. Considering (1) that the second factor is the most important, especially in cases of deadly force, and (2) that I have assigned little weight to the first and third factors, I conclude that plaintiff adequately pled that Trooper Retana acted unreasonably and violated Mr. Millsap's constitutional rights when he shot and killed him.

### b. Deputy Alonso's conduct

Although Deputy Alonso and Trooper Retana responded to the same incident, I reach a different conclusion as to the second *Graham* factor with respect to Deputy Alonso because he shot at the 4Runner only after Trooper Retana did so. Defendant argues that "[t]he fact that Trooper Retana shot first, in conjunction with the allegation that Deputy Alonso stated he did not know the location of Trooper Retana, lends credence to Deputy Alonso's belief that a shot was fired from the Stolen 4Runner, even if ultimately mistaken . . . ." ECF No. 28 at 8. Deputy Alonso relies on *Durastanti* to argue that an officer can justifiably use deadly force when they have a reasonable perception of imminent danger, even if that perception is mistaken. *Id*. Although Deputy Alonso was standing no more than a few feet from Trooper Retana, he could not have known what Trooper Retana observed before he began firing. Deputy Alonso was facing a rapidly changing situation in a rural area at night. A reasonable officer on the scene could have had difficulty distinguishing between a gunshot coming from their fellow officer and a gunshot coming from a vehicle several feet away. Even if the reasonable officer could

determine that Trooper Retana was the one who shot, it would be reasonable for them to believe that he did so because he saw or perceived some type of threat that would require deadly force. I therefore conclude that a reasonable officer in Deputy Alonso's position could have perceived imminent danger based on shots being fired and a fellow officer's decision to use deadly force. The second *Graham* factor weighs in Deputy Alonso's favor.

Because the analysis for the remaining two *Graham* factors is largely identical to the analysis I did above for Trooper Retana, I incorporate my previous analysis here. The first *Graham* factor weighs towards Deputy Alonso with the same limited magnitude that it weighs towards Trooper Retana because both officers had the same information regarding the 4Runner's occupants. The third *Graham* factor also weighs slightly towards Deputy Alonso because Mr. Millsap attempted to evade arrest when he drove the 4Runner around the officers. All three *Graham* factors weigh in Deputy Alonso's favor. I thus conclude that his actions were reasonable, and that Deputy Alonso is entitled to qualified immunity.

2. <u>Whether the constitutional right at issue was clearly established</u>

I next must consider whether the constitutional right that Trooper Retana violated was clearly established at the time of the alleged violation. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she was doing violates that right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted). In this circuit, a right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

Clearly established law should not be defined at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal quotations omitted). "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (unpublished) (citing *Mullenix*, 577 U.S. at 12) (internal quotations omitted); *see also White*, 137 S. Ct. at 551. The clearly established standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). The Tenth Circuit has repeatedly counseled, however, that "[w]e cannot find qualified immunity whenever we have a new fact pattern." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Furthermore, a defendant asserting qualified immunity on a motion to dismiss is subject to a more challenging standard of review than applies on summary judgment. *Kaven*, 765 F.3d at 1194. In the Tenth Circuit, a qualified immunity analysis for excessive force involves something of a sliding scale: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey*, 509 F.3d at 1284 (citation omitted).

Trooper Retana argues that even if a constitutional violation occurred, the right at issue was not clearly established. Plaintiff argues the right was clearly established and cites to *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009). In *Cordova*, the court ruled that a suspect's recklessly driving a stolen vehicle was not grounds for reasonable use of deadly force when the officers were not in immediate danger and the potential threat to others was a mere possibility. *Id.* at 1190–91. The court reached this conclusion despite the events in *Cordova* being substantially more alarming than the events of the present case. There, the suspect ran two red

lights, drove on the wrong side of the highway, and attempted to ram police vehicles. *Id.* at 1187. The events leading up to the shooting, however, were not determinative in whether the shooting was justified. Instead, the Tenth Circuit found it determinative that Officer Aragon was *no longer* in immediate danger at the time he fired the shots, even if he had been moments before, and that there was no evidence that the suspect put other individuals in danger. *Id.* at 1190.

Here, as in *Cordova*, Mr. Millsap's vehicle had already passed the officers when they began shooting. Additionally, Mr. Millsap had not violated other traffic laws like running two red lights, nor had he driven on the wrong side of the highway. Finally, resolving all factual inferences in favor of plaintiff, Mr. Millsap never rammed or attempted to ram his vehicle into officers. Thus, if the Tenth Circuit in *Cordova* found that the right at issue was clearly established, then the right at issue here—under a substantially less alarming fact pattern—was clearly established.

Trooper Retana, in his motion to dismiss, attempts to distinguish *Cordova* on the grounds that the officers there did not know the vehicle was stolen at the time they shot, and that the vehicle in *Cordova* was no longer heading in the officer's direction when the shots were fired. The first distinction falls flat, as the officer in *Cordova* had a reasonable suspicion that the truck had been stolen, and the driver committed numerous crimes in the officer's presence before ultimately being shot. *Cordova*, 569 F.3d at 1185–88. To establish a clearly established right, the facts need not be exactly identical to the fact pattern at bar. *See Casey*, 509 F.3d at 1284. I refuse to recognize the second distinction, as plaintiff clearly alleges that the 4Runner was not heading in the officers' direction when they began to fire. ECF No. 24 at ¶ 24. Trooper Retana cannot dispute this allegation at the motion to dismiss stage. The only grounds on which

*Cordova* could be meaningfully distinguished is that the officers there were in greater danger than Trooper Retana and Deputy Alonso, which supports a conclusion that the right was clearly established. Mrs. Millsap has therefore met her burden of showing that Trooper Retana violated a clearly established constitutional right.[1]

Trooper Retana cites to multiple supposedly analogous cases to argue that the officers did not violate a clearly established constitutional right; however, those cases are distinguishable. The first such case is *Durastanti*. As noted earlier, the vehicle in *Durastanti* was driving directly towards the officer when he fired his weapon. Indeed, the vehicle struck him after he began firing. *Durastanti*, 607 F.3d at 661. While defendant is right that "[i]n *Durastanti*, the court held that an officer was entitled to qualified immunity on a claim of excessive force when the suspects were fleeing at low speeds and the officers were in danger of physical harm," ECF No. 29 at 10–11, the danger of physical harm in *Durastanti* was greater than any danger Mr. Millsap posed here.

Trooper Retana also cites *Brosseau v. Haugen*, 543 U.S. 194 (2004) to show that it was not clearly established that an officer cannot use deadly force on the *occupants* of a slow-moving vehicle, even when the officer was not in the direct path of the vehicle. This is immaterial, as the law that was clearly established when Officer Brosseau shot the suspect in 1999 proves nothing with regard to the law as it was clearly established in 2017. For example, *Cordova* had not yet been published. As for whether *Brosseau* establishes that an officer can use deadly force against a suspect in a slow-moving vehicle not bearing down on the officer, Trooper Retana once again

---

[1] Mrs. Millsap also cites a variety of cases from other circuits to support the proposition that "it is unreasonable to shoot the driver of a slow-moving vehicle that is maneuvering in a non-aggressive manner and does not pose an immediate threat or create a situation where there is a near certainty of death or serious bodily injury to police officers or other third parties." ECF No. 24 at 10. Both defendants argue that such cases do not bind this court, but analogous cases need not be from the 10th Circuit in order for a clearly established constitutional right to exist. *Thomas*, 765 F.3d at 1194.

cites a case where the suspect posed a much greater danger to officers.  The suspect in *Brosseau* already had a warrant out for his arrest when officers were called to respond to a violent assault. *Id.* at 195.  The suspect had been running for thirty to forty-five minutes, and the court noted that he would do anything to avoid capture.  *Id.* at 196.  Moments before Officer Brosseau fired her weapon, her hands had been in the vehicle through the smashed driver-side window as she attempted to grab the car keys and struck the suspect with the butt of her gun.  *Id.*  She was not in the vehicle's direct path when she fired her weapon only because she stepped back from the car once the suspect started the ignition with part of her body still in the car.  *Id.*  By contrast, the officers in the present case were not in nearly as much danger as the officer in *Brosseau*.

Finally, Trooper Retana argues that *Carabajal v. City of Cheyenne*, 847 F.3d 1203 (10th Cir. 2017) stands for the same proposition as that in *Brousseau*.  But the officer there was again directly in the moving vehicle's path when he fired his weapon, unlike here.  *Id.* at 1208. *Carabajal* is thus also factually distinguishable.  In light of the above discussion, I conclude that the law was clearly established, and that Trooper Retana should have known that he could not use deadly force against Mr. Millsap under these circumstances.  Trooper Retana is thus not entitled to qualified immunity.

### B. Whether municipal defendant Jefferson County Sheriff's Department is liable for unconstitutional policies or failure to train

Mrs. Millsap also brings a § 1983 claim against the Department, under a *Monell* theory of liability, for Deputy Alonso's alleged Fourth Amendment violations.  She alleges that the Department's failure to train officers and creation of per se unconstitutional policies were the moving forces and proximate causes of Mr. Millsap's death.  ECF No. 24 at ¶¶ 57–69.

In certain circumstances, municipalities are considered to be "persons" for the purposes of § 1983 liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  "But, under §

1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations and quotations omitted). Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). The policy or custom must be the "moving force" behind the constitutional deprivation committed by a municipal employee. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). There are multiple ways by which a plaintiff can establish the existence of a policy or custom. *See Bryson v. Oklahoma City*¸ 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff proffers two such approaches in alleging that the Department's policies or customs caused Mr. Millsap's Fourth Amendment rights to be violated. First, she alleges that the Department's failure to train officers in the implementation and constitutional limits of using deadly force caused Mr. Millsap's death. Second, she contends that the Department had a per se unconstitutional policy of teaching officers that it was permissible to use deadly force against a non-threatening, fleeing vehicle. ECF No. 24 at ¶¶ 61–62, 66–67.

While Mrs. Millsap's allegations could support a Monell claim in other circumstances, I concluded above that the complaint did not state a claim against Deputy Alonso. A *Monell* claim cannot stand without an underlying constitutional violation by one of the municipality's employees. As a result, the claim against the Department fails and is accordingly dismissed.

### C. Whether Colonel Matthew Packard and Mr. Turano are individually liable for unconstitutional policies or failure to train

Finally, Mrs. Millsap sues Colonel Matthew Packard and Ralph Turano under the theory that their actions were the moving force and proximate cause of Mr. Millsap's death. ECF No. 24 at ¶ 69. She alleges that Colonel Packard has ultimate policymaking power for the Colorado

State Patrol, and that he and Mr. Turano are responsible for properly training troopers on the constitutional use of deadly force. *Id.* at ¶¶ 59, 63.  Plaintiff further alleges that Colonel Packard and Mr. Turano oversee training programs in which troopers are not being trained on the proper constitutional limits of deadly force.  Plaintiff alleges these programs tell troopers that it is

> Permissible to use deadly force against a vehicle so long as officers consider the vehicle a deadly weapon and it is used to flee apprehension even if the vehicle itself is not being utilized in a manner so as to create a scenario where there is an actual threat, or reason to believe there is a near certainty of death or serious bodily injury to officers or civilians.

*Id.* at ¶ 62.

Under § 1983, supervisors cannot be vicariously liable for the constitutional violations of their employees under a theory of respondeat superior.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).  In order for Colonel Packard and Mr. Turano to be held liable for violating Mr. Millsap's constitutional rights, there must be an affirmative link between the violation and their participation in that violation.  *See Stidham v. Peace Officer Stds. and Training*, 265 F.3d 1144, 1156–57 (10th Cir. 2001).

Both claims fail because plaintiff cannot show an affirmative link between the unconstitutional shooting of Mr. Millsap and the conduct of Colonel Packard and Mr. Turano. Plaintiff alleges that Trooper Retana knew that "using deadly force is never allowed if there is not an imminent threat of near certain death or serious bodily injury to an officer or civilian." ECF No. 24 at ¶ 40.  Based on this allegation, Trooper Retana understood the constitutional limits on the use of deadly force despite the alleged improper training.  Thus, even if Colonel Packard and Mr. Turano were responsible for inadequate, improper, and per se unconstitutional policies and failure to train, there is no affirmative link between such behavior and Mr. Millsap's unconstitutional seizure.  This claim therefore fails and is dismissed.

## ORDER

The Jefferson County Defendants' motion, ECF No. 28, is GRANTED. The CSP Defendants' motion, ECF No. 29, is GRANTED in part and DENIED in part as follows:

1. The Court dismisses plaintiff's § 1983 failure to train and creation of per se unconstitutional policies claim against Colonel Matthew Packard in his individual capacity.
2. The Court dismisses plaintiff's § 1983 failure to train and creation of per se unconstitutional policies claim against Ralph Turano in his individual capacity.
3. Plaintiff's § 1983 claim alleging excessive force against Trooper Gregorio Retana may proceed.

DATED this 29th day of July, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge